1
2
3
4
5
6                      UNITED STATES DISTRICT COURT
7                      EASTERN DISTRICT OF CALIFORNIA
8
9    ERIC LEWIS,                              CASE NO. CV F 09-0318 LJO DLB
10                                            **ORDER ON MOTION FOR SUMMARY**
                           Plaintiff,         **JUDGMENT**
11          vs.
12
     DR. JAMES PEAKES, Secretary
13   United States Department of Veterans
     Affairs
14                       Defendant.
15   _____/
16
17          By notice filed on October 13, 2010, Defendant The Secretary of the Veterans Affairs ("VA")
     seeks summary judgment or in the alternative summary adjudication, pursuant to Fed.R.Civ.P. 56 on
18
     plaintiff's complaint.  Plaintiff Eric Lewis filed an opposition to the motion on November 17, 2010.
19
     Defendant filed a reply on November 23, 2010.   Pursuant to Local Rule 230(g), this matter was
20
     submitted on the pleadings without oral argument and the hearing was vacated.  Having considered the
21
     moving, the opposition and the reply papers, as well as the Court's file, the Court issues the following
22
     order.[1]
23
24   _____
25          [1] The parties have filed numerous objections to the evidence submitted by the opposing side. The court has not relied
     on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment as
26   to the claims, the Court found triable issues exist regarding the employment decisions. The Court has granted summary
     judgment as to the statute of limitations because plaintiff failed to meet his burden under either claim, as explained in the body
27   of the order. To the extent that the court may have considered some of the disputed evidence in finding that triable issues
     exist regarding the claims, the objections are OVERRULED.  Further, the court is not obligated to consider matters not
28   specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The
     motion and opposition must designate and reference specific triable facts. *Carmen v. San Francisco Unified School Dist.*,

# FACTUAL BACKGROUND

Plaintiff alleges he was employed as a Purchase and Hire Contractor Electrician in Facilities Management Service (FMS) at the VA Medical Center in Fresno, California from July 2, 2007 until terminated on January 29, 2008.

Plaintiff alleges one cause of action for Violation of Title VII of the Civil Rights Act for race discrimination (African American) and retaliation.  Plaintiff alleges that he was subjected to disparate treatment and hostile environment harassment based on race (Black) and retaliation.

## A.    Defendant's Factual Position

Defendant contends that Plaintiff was hired as a temporary appointment electrician, and his appointment was limited to one year or less.  The appointment was extended for additional year with the appointment ending on September 20, 2008.  Plaintiff's foreman was Dennis Myres, who oversaw day-to-day performance of the construction workers, including plaintiff, and Mr. Myres reported to Jean Russell ("Ms. Russell"), who was the supervisor of the construction activities at the VA. Plaintiff signed an Employee's Statement of Understanding Regarding Temporary Appointment acknowledging that as a temporary employee he was "subject to termination at any time without use of adverse action procedures."  (Doc. 29-2, Separate Statement, Facts 1-4.)

Defendant contends that plaintiff was terminated in January 2008, in advance of the expiration of his temporary employment for poor performance.  Electrical work in hospitals is different from residential construction work and requires that electrical receptacles be placed with the grounding upward.  Plaintiff placed the electrical receptacles at the VA with the grounding downwards, which was contrary to the directions of his foreman, Mr. Myres.  Plaintiff and Mr. Myres disagreed whether plaintiff was performing according to the blueprints.  Defendant contends in November 2007, Mr. Myres recommended to Ms. Russell that plaintiff be removed based upon this and other unsatisfactory performance.  In January 2008, two additional electricians were hired to meet the workload.  Other electricians reported that plaintiff's work demonstrated poor workmanship and noncompliance with the blueprints.  On January 29, 2008, Mr. Myres removed plaintiff from his position.  (Doc. 29-2, Separate

---

237 F.3d 1026, 1029 (9th Cir. 2001).

1   Statement, Facts 5-11.)

2          The day prior to plaintiff's removal, plaintiff had contacted an EEO counselor and filed a

3   complaint of harassment. Defendant contends Mr. Myres was unaware that plaintiff had filed a charge

4   of harassment when Mr. Myres removed plaintiff.  Plaintiff acknowledges that Mr. Myres did not make

5   any racially derogatory comments to plaintiff. (Doc. 29-2, Separate Statement, Facts 12-18.)

6   **B.      Plaintiff's Factual Position**

7          Plaintiff contends that he is African-American with 22 years of experience as a journeyman

8   electrician.  He was the only African American employee on the project and after his termination, he was

9   replaced by two Caucasian electricians who had less experience and training than plaintiff.

10          Plaintiff agrees that his supervisor was Mr. Myres and that Ms. Russell was Mr. Myres'

11   supervisor.  Both are Caucasian.  When plaintiff was hired, Ms. Russell told him that his appointment

12   may last as long as seven years, and would typically last the duration of the project.

13          During his employment at the VA, Plaintiff disagreed only with the instructions from Mr. Myres

14   that he thought were unsafe, were not code compliant, or would pose a risk of injury.  Plaintiff contends

15   Mr. Myres tried to make Plaintiff perform faulty work on a daily basis or use hazardous and unsafe

16   procedures.  Plaintiff contends that the language Mr. Myres used against plaintiff was different than the

17   language he used toward the Caucasian employees. Mr. Myres yelled and cussed at Plaintiff and also

18   used profanity towards him. As a result, Plaintiff was harassed in front of the co-workers on a daily

19   basis.

20          In January 2008, Mr. Myres instructed two newly hired electricians to "watch over" Plaintiff's

21   daily activities.  Both of the electricians had vastly inferior experience and expertise and were not

22   qualified to oversee plaintiff's work.  They were instructed to oversee only plaintiff's work.   Plaintiff

23   was never advised by anyone that his work performance was unsatisfactory, and in fact, his electrical

24   work was inspected weekly and passed inspection every week.  During his employment he never

25   received any performance reviews, reprimands, progressive discipline or counseling regarding his work

26   performance.

27          Prior to being terminated, Plaintiff went to the EEO manager and made complaints about

28   discriminatory treatment by his supervisors, particularly Mr. Myres; that the EEO Manager informed his

3

1    supervisors of these complaints, and that several days later, Plaintiff was terminated.  Plaintiff contends

2    that he filed a Equal Employment Opportunity complaint against his supervisor, Mr. Myres in January

3    2008 and was terminated a week later.

4                                      **ANALYSIS AND DISCUSSION**

5    **A.      Summary Judgment/Adjudication Standards**

6            F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on

7    all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no genuine

8    issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.

9    F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

10   1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

11   The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order

12   to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct.

13   1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On

14   summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material

15   fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56 ( c); *Covey v.*

16   *Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398

17   U.S. 144, 157, 90 S.Ct. 1598 (1970).

18          To carry its burden of production on summary judgment/adjudication, a moving party "must

19   either produce evidence negating an essential element of the nonmoving party's claim or defense or

20   show that the nonmoving party does not have enough evidence of an essential element to carry its

21   ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

22   F.3d 1099, 1102 (9th Cir. 2000).  "[T]o carry its ultimate burden of persuasion on the motion, the moving

23   party must persuade the court that there is no genuine issue of material fact."  *Nissan Fire*, 210 F.3d at

24   1102.  "As to materiality, the substantive law will identify which facts are material.  Only disputes over

25   facts that might affect the outcome of the suit under the governing law will properly preclude the entry

26   of summary judgment."  *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

27          "If a moving party fails to carry its initial burden of production, the nonmoving party has no

28   obligation to produce anything, even if the nonmoving party would have the ultimate burden of

                                                    4

1   persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

2   "If, however, a moving party carries its burden of production, the nonmoving party must produce

3   evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103. "If the nonmoving party fails

4   to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion

5   for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

6   106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for

7   discovery and upon motion, against a party who fails to make the showing sufficient to establish the

8   existence of an element essential to that party's case, and on which that party will bear the burden of

9   proof at trial.")

10  **B.     Racial Discrimination and Retaliation under Title VII**

11          Defendant argues that plaintiff cannot meet his *prima facie* showing of discrimination or

12  retaliation. Defendant argues that plaintiff cannot demonstrate similarly situated employees were treated

13  more favorably. Plaintiff fails to meet his *prima facie* case of discrimination because he cannot identify

14  any similarly situated electricians who also disobeyed the instructions of Mr. Myres who were not also

15  terminated. He offers no showing that other electricians refused to follow the directions of the foreman,

16  such as putting the grounds down when Mr. Myres instructed that the receptacles be placed with the

17  ground up, that were treated more favorably. (Doc. 29-1, Moving Papers p. 6-7.)

18          **1.     *McDonnell Douglas* Shifting Burden Framework**

19          Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire

20  or to discharge any individual, or otherwise to discriminate against any individual with respect to his

21  compensation, terms, conditions, or privileges or employment, because of such individual's race . . ."

22  42 U.S.C. §2000e et seq. A plaintiff may show violation of Title VII by proving disparate treatment or

23  disparate impact, or by proving the existence of a hostile work environment. *Sischo-Nownejah v.*

24  *Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991). Here, plaintiff alleges he was

25  intentionally discriminated on the basis of race.

26          A plaintiff may establish a *prima facie* case of discrimination by introducing evidence that

27  "give[s] rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*,

28  450 U.S. 248, 253, 101 S.Ct. 1089, 1094 (1981); *Sischo-Nownejah*, 934 F.2d at 1109. The evidence may

5

1   be either direct or circumstantial, and the amount that must be produced to create a *prima facie* case is

2   "very little." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Sischo-Nownejah*, 934 F.2d at 1110-1111.

3   A plaintiffs' Title VII claim is analyzed through the burden-shifting framework of *McDonnell Douglas*

4   *Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under this analysis, plaintiffs

5   must first establish a *prima facie* case of employment discrimination.  *Hawn v. Executive Jet*

6   *Management, Inc.,* 615 F.3d 1151 (9th Cir. 2010).  If plaintiff establishes a *prima facie* case, "[t]he

7   burden of production, but not persuasion, then shifts to the employer to articulate some legitimate,

8   nondiscriminatory reason for the challenged action." *Id.*  If defendant meets this burden, plaintiffs must

9   then raise a triable issue of material fact as to whether the defendant's proffered reasons for their

10  terminations are mere pretext for unlawful discrimination. *Id.*  The employer's proof of legitimate,

11  nondiscriminatory reasons for its action dispels the inference of discrimination raised by plaintiff's *prima*

12  *facie* case. The *McDonnell Douglas* framework "disappears," leaving plaintiff with the ultimate burden

13  of persuading the trier of fact that defendant intentionally discriminated against plaintiff.  *Reeves v.*

14  *Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000).

15              **2.    Burden of Proof on *Prima Facie* Case**

16          Plaintiff may establish a *prima facie* case based on circumstantial evidence by showing: (1) that

17  he is a member of a protected class; (2) that he was qualified for his position and performing the job

18  satisfactorily; (3) that he experienced adverse employment actions; and (4) that "similarly situated

19  individuals outside [his] protected class were treated more favorably, or other circumstances surrounding

20  the adverse employment action give rise to an inference of discrimination."  *Hawn v. Executive Jet*

21  *Management, Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *see also Peterson v. Hewlett-Packard Co.*, 358

22  F.3d 599, 603 (9th Cir. 2004).

23                  (A)    Similarly Situated Employees

24          VA argues that plaintiff cannot meet his burden of proof on the fourth element of his *prima facie*

25  case.  Defendant argues plaintiff cannot show that similarly situated employees were treated more

26  favorably.  Defendant argues that plaintiff fails to meet his burden because he cannot identify any

27  similarly situated electricians who also disobeyed the instructions of Mr. Myres who were not

28  terminated. (Doc. 29, P&A p. 6.)  Defendant argues that plaintiff engaged in insubordination by failing

1    to follow the directions of his foreman, Mr. Myres, and challenged the foreman's authority.  Defendant

2    argues that plaintiff is not similarly situated to anyone because of his insubordination.

3         Plaintiff argues defendant's focus on performance deficiencies is irrelevant. Plaintiff argues that

4    this is an improper "similarity" because Mr. Myres did not subject other electricians to the same

5    instruction to which plaintiff was subjected and to which plaintiff objected.  Plaintiff argues that Mr.

6    Myres subjected only plaintiff, an African American, to instructions that were unsafe and not code

7    compliant.  Plaintiff further argues he will not be similarly situated to anyone because he was the only

8    electrician on the job until three weeks before his termination. Plaintiff argues that the proper

9    determination is that there were inferior-qualified electricians who were hired to replace plaintiff.

10        Individuals are similarly situated when they have similar jobs and display similar conduct.

11   *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). The employees' roles need not be

12   identical; similarly situated means "similar in all material respects."  *Hawn v. Executive Jet Mgmt., Inc.*,

13   615 F.3d 1151, 1157 (9th Cir.2010), quoting *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125

14   (9th Cir. 2009); *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ("In order to show that the

15   "employees" allegedly receiving more favorable treatment are similarly situated (the fourth element

16   necessary to establish a *prima facie* case under Title VII), the individuals seeking relief must

17   demonstrate, at the least, that they are similarly situated to those employees in all material respects).  A

18   showing that employee's are "similarly situated" is but one way to show an inference of discrimination.

19   "A plaintiff may do so through comparison to similarly situated individuals, **or** <u>any other circumstances</u>

20   <u>surrounding the adverse employment action that give rise to an inference of discrimination.</u>" *Hawn*, 615

21   F.3d at 1156 (emphasis added).  "[W]hether two employees are similarly situated is ordinarily a question

22   of fact."  *Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n. 5 (9th Cir.

23   2007).

24        Plaintiff has raised an issue of fact as to whether he was "similarly situated."  He presents

25   evidence that two additional electricians were working with him during the last few weeks that the was

26   employed by the VA.  They were performing the same work.  The other electricians were Caucasian.

27   He presents evidence that he alone was subjected to instructions from the foreman regarding the placing

28   the electrical receptacles "ground up."  No other electrician was subjected to the same instructions.  In

7

1    fact, plaintiff alone was the electrician during most of the relevant period.

2          VA argues that plaintiff has admitted insubordination because he admits he placed the electrical

3    receptacles down when he was told to place them up.  Therefore, VA argues plaintiff is not similarly

4    situated to other employees.

5          The Court finds, however, that the defendant's argument that plaintiff failed to follow the

6    foreman's directions, itself, creates an issue of fact.   Plaintiff does not admit he acted with

7    "insubordination."  He admits that Mr. Myres told him to do the wrong work to which he objected.  He

8    disputes that the instruction was correct procedure, and therefore, whether it was insubordination to

9    place the electrical receptacles with the ground down.  Whether the receptacles should be placed up

10   creates an issue of fact because this was the purported reason to terminate plaintiff.  Plaintiff simply

11   disputes the foreman's instruction. The Court finds that whether or not he followed the foreman's

12   instructions does not remove him from being "similarly situated" to other employees.

13         Moreover, plaintiff has presented "other circumstances surrounding the adverse employment

14   action that give rise to an inference of discrimination."  *Hawn*, 615 F.3d at 1156.  Defendant had a

15   continuing need for electricians.   Additional electricians were hired, each of which had arguably

16   significantly inferior qualifications to plaintiff.  These additional electricians were both Caucasian and

17   ultimately replaced plaintiff on the job when he was terminated.  The VA continued to need electrical

18   workers after plaintiff was terminated which it fulfilled by employing two Caucasian workers with much

19   less experience than plaintiff possessed.  *See Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072 (9th

20   Cir.1986) (plaintiff may show part of *prima facie* case by showing his employer sought a replacement

21   with similar qualifications, thus demonstrating a continued need for the same services and skills.)  Given

22   these facts, plaintiff has raised an issue of fact as to whether there are other circumstances that give rise

23   to an inference of discrimination.

24         Cases cited by defendant are distinguishable.  *Vasquez v. County of Los Angeles*, 349 F.3d 634,

25   641 (9th Cir. 2003), the court considered that employees were not similarly situated where the type and

26   severity of an alleged offense was dissimilar.  In *Vasquez*, the "similarly situated" analysis involved the

27   burden in the *McDonnell Douglas* test for "pretext," and not "similarly situated" as part of the *prima*

28   *facie* case. *Vasquez*, 349 F.3d at 641 ("Vasquez's claim fails because, even assuming (which we do not

8

1  decide) that he can make out a *prima facie* case under the *McDonnell Douglas* framework, he cannot

2  establish that the County's articulated non-discriminatory reason for his transfer is pretextual.") The

3  *Vasquez* court evaluated the disciplinary record on the burden-shifting of "pretext." Indeed, "[t]he

4  concept of "similarly situated" employees may be relevant to both the first and third steps of the

5  *McDonnell Douglas* framework." *Hawn*, 615 F.3d at 1158. Whether similarly situated is considered

6  in the context of both plaintiffs' *prima facie* case or the pretext stage is significant because a plaintiff's

7  burden is much less at the *prima facie* stage than at the pretext stage. *Hawn*, 615 F.3d at 1158 ("The

8  difference between the first and third steps of the *McDonnell Douglas* framework is not without some

9  consequence. Among other things, a plaintiff's burden is much less at the *prima facie* stage than at the

10 pretext stage.") "The showing the plaintiff must make as to the elements of the *prima facie* case in order

11 to defeat a motion for summary judgment is de minimis." *Sutera v. Schering Corp.,* 73 F3d 13, 16 (2nd

12 Cir. 1995).[2] Thus, plaintiff raises an issue of fact as to whether any other circumstances surrounding the

13 adverse employment action gives rise to an inference of discrimination.

14                              (B)    Same Actor

15       VA further argues plaintiff cannot establish a *prima facie* case because the "same actor"

16 inference is applicable to this case. (Doc. 29, Moving papers p. 7.) VA argues that both Ms. Russell and

17 Mr. Myres both were involved in the decision to hire plaintiff in July 2007 and extend his appoint in

18 October 2007. His removal three months later was by the same actors.

19       Under Title VII, where the same person both hired and fired plaintiff, and both actions occur

20 within a short period of time, a "strong inference" arises that there was no discriminatory motive.

21 *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). The "same actor" inference also

22 

23       [2] In another case cited by the VA, *Leong v. Potter*, 347 F.3d 1117 (9th Cir. 2003), the Ninth Circuit upheld a finding
that a Post Office employee was not similarly situated to his fellow employees. Leong was subject to a "Last Chance

24 Agreement" negotiated as an alternative to termination after earlier, serious violations of Postal Service rules and when he
violated the "Last Chance Agreement," he was terminated. To present his *prima facie* case, Leong introduced evidence of

25 other employees who were penalized but not fired for the use of equally foul language. The Court found that these employees
were not similarly situated, as "they were not subject to such agreements." *Id.* at 1124. "Although these employees did

26 commit serious violations, it appears none amassed a record of misconduct comparable to Leong's." *Id.* This case is
distinguishable because it is disputed whether plaintiff engaged in insubordination and whether the instructions from the

27 foreman were proper electrical procedure.

28

1  applies to cases in which plaintiff was not actually fired but merely demoted or offered less favorable

2  job assignments. *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096–1097 (9th Cir. 2005).

3  The "same actor" inference, however, may be weakened by other evidence and is "insufficient to warrant

4  summary judgment for the defendant if the employee has otherwise raised a genuine issue of material

5  fact." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 573–574 (6th Cir. 2003) (en banc).

6          Plaintiff argues that the same actor inference is inapplicable because he presents evidence that

7  Mr. Myres developed a bias towards plaintiff between the time his contract was extended in October

8  2007 and the time he was terminated on January 29, 2008.  (Doc. 33, Opposition p. 15.)  The same actor

9  interference may be overcome where plaintiff offers evidence suggesting that the foreman "developed

10  a bias against plaintiff" during the period.  *Coghlan*, 413 F.3d at 1097.

11          Here, plaintiff introduces evidence that Mr. Myres may have developed a bias against plaintiff.

12  Plaintiff presents evidence that the felt "harassed" by Mr. Myres such that he filed an EEO complaint

13  with Ms. Hill-Wegley a week before he was terminated.  A week after the complaint was filed, plaintiff

14  was terminated.  The same actor inference does not warrant summary judgment where, as here, plaintiff

15  has raised factual issues of new bias by the actor who recommended plaintiff's termination.  *Compare*

16  *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir.1996)) (relying in part on the

17  same-actor inference in granting summary judgment against plaintiff where she "did not produce any

18  evidence showing [her employer's] proffered reasons were pretexts for an improper discriminatory

19  motive");  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1287 (9th Cir.2000) (relying in part on the

20  same-actor inference in granting summary judgment against plaintiff where she "ha[d] not cast doubt

21  on the sincerity of [defendant's] explanation"), *cert. denied,* 533 U.S. 950 (2001).  Accordingly, plaintiff

22  has rebutted the same actor inference and therefore, summary judgment is denied for the race

23  discrimination and retaliation claims.

24                    (C) Causal Connection between Plaintiff's EEO Activity and his Termination

25          Plaintiff claims he was retaliated against for filing an EEO complaint against Mr. Myres.

26          Retaliation claims brought pursuant to Title VII are governed by the *McDonnell Douglas*[3]

27  _____

28          [3]        *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

                                                           10

1   burden-shifting framework. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild*

2   *Industries, Inc.*, 797 F.2d 727, 730-731 (9th Cir. 1986) (order and allocation of proof for retaliation

3   claims follow familiar scheme announced in *McDonnell Douglas)*.  To make out a retaliation *prima facie*

4   case, a plaintiff must demonstrate that:

5         1.      He/she engaged in protected activity;

6         2.      He/she suffered an adverse employment action; and

7         3.      There was a causal link between his/her activity and the employment decision.

8   *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003).

9         VA argues that Plaintiff cannot meet his *prima facie* burden because no causal link exists

10   between his EEO activity and his removal.  Defendant argues that the decision to terminate plaintiff was

11   made before his EEO activity. Defendant argues that Mr. Myres was concerned about Plaintiff's

12   unsatisfactory work performance since at least November 2008 when Mr. Myres recommended his

13   removal. Mr. Myres was unaware of his EEO complaint. The decision was made in mid- January before

14   Plaintiff saw the EEO counselor on or about January 28, 2008.  Since Mr. Myres did not know of the

15   EEO retaliation counseling, there is no causal connection between plaintiff's firing and his EEO activity.

16         Plaintiff must demonstrate a causal link between the employee's protected activity and the

17   employer's adverse action. *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988), *cert. denied,* 488 U.S.

18   1006 (1989).  "To establish causation, the plaintiff must show by a preponderance of the evidence that

19   engaging in the protected activity was one of the reasons for the adverse employment decision and that

20   but for such activity the decision would not have been made." *Kraus v. Presidio Trust Facilities*

21   *Division/Residential Management Branch*, 704 F.Supp.2d 859, 863 (N.D. Cal. 2010) (citing *Villiarimo*

22   *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)).  "The causal link may be established by

23   an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [plaintiff]

24   engaged in protected activities and the proximity in time between the protected action and allegedly

25   retaliatory employment decision.'" *Jordan v. Clark*, 847 F.2d at 1376 (quoting *Yartzoff v. Thomas*, 809

26   F.2d 1371, 1376 (9th Cir. 1987)), *cert. denied,* 488 U.S. 1006 (1989).

27         The timing of an adverse employment action can provide strong evidence of retaliation. *Stegall*

28   *v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1069 (9th Cir. 2003); *Yartzoff v. Thomas*, 809 F.2d 1371,

1376 (9th Cir.1987) (causation was found from proximity alone where the adverse actions occurred

within three months after protected activity, two weeks after charge investigated, and less than two

months after investigation ended); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir.1989)

(causation established when terminations occurred forty-two and fifty-nine days after EEOC hearings)*,*

*cert. denied,* 494 U.S. 1056 (1990).

Plaintiff argues that his termination was sufficiently proximate to his EEO complaint such that an inference arises.  Indeed, plaintiff filed the EEO complaint one week prior to his termination.  The proximity to the filing of the charge is a strong inference that the adverse action occurred because of the EEO complaint.

VA argues that the inference is rebutted because there is no evidence that Mr. Myres knew plaintiff had filed the charge and that the decision to terminate plaintiff was made a month before he filed the charge.  The employer's knowledge that the employee had engaged in a protected activity is essential to the required causal link.  *Rivera v. National R.R. Passenger Corp.*, 331 F.3d 1074 (9th Cir. 2003).

Plaintiff argues that Mr. Myres knew of the EEO complaint before he fired plaintiff.  Mr. Myres admitted that he knew plaintiff had met with the EEO Program Manager, Ms. Hill-Wegley, before he terminated plaintiff. (Doc. 33, Opposition p. 17.)   Plaintiff's employment was terminated only a week after he made his EEO complaint.  Plaintiff also argues that an inference of retaliation can be made because Jean Russell (a supervisor of the Purchase and Hire crew in which plaintiff was employee and who ultimately made the termination decision based on Mr. Myres' recommendation) told the EEO program Manager, Chicketa Hill Wegley, that she was hoping plaintiff was going to do better.

The extent of Mr. Myres' knowledge of the EEO complaint is a question of fact.[4]  Plaintiff argues that there is circumstantial evidence that Mr. Myres knew of the EEO complaint.  He presents evidence

---

[4] Whether the decision to terminate plaintiff had been made one month prior to his filing the complaint is also an issue of fact.  Plaintiff presents evidence that it is not credible that Ms. Russell made the decision to terminate plaintiff in December 2007, yet waited to terminate him only one week after he had filed his EEO complaint against Mr. Myres.  (Doc. 33, Plaintiff's response to facts, Fact 11.)  Plaintiff presents evidence that Ms. Russell, when informed of the EEO complaint, stated she had hoped Mr. Lewis was going "to get better," which implies she was not thinking of firing him.  Plaintiff argues that Ms. Russell never told Ms. Hill-Wegley that Ms. Russell had already decided to terminate plaintiff and in fact her statement indicates that she had not made the decision.  (Doc. 33, Plaintiff's Separate Statement Fact 21.)

12

1   that Mr. Myres knew plaintiff had met with th EEO Program Manager Chicketa Hill-Wegley before

2   plaintiff was termination.  Ms Hill-Wegley, in turn, told Ms. Russell and Mike Riley,  Ms. Russell's

3   supervisor of plaintiff's EEO complaint against Mr. Myres.  Plaintiff presents evidence that Mike Riley

4   and Mr. Myres may have been friends due to their long work relationship.  Plaintiff also presents

5   evidence that a co-worker testified that Mr. Myres demeanor changed shortly afterwards to one of anger.

6   Accordingly, there is an inference that Mr. Myres was aware of the complaint against him filed by

7   plaintiff.  At a minimum, there is a question of fact.

8           **3.**       **Articulated Legitimate Nondiscriminatory Reason**

9        Since plaintiff can establish a *prima facie* case, defendant argues the next step in the *McDonnell*

10  *Douglas* burden shifting analysis:  Defendant argues that it articulates a legitimate non-discriminatory

11  reasons for his termination.  Plaintiff was terminated for work performance issues and insubordination.

12  Defendant argues neither plaintiff's race nor his EEO activity can overcome the undisputed evidence that

13  he refused to perform the tasks as assigned by the foreman that led to his removal. VA has articulated

14  a non-discriminatory reason for terminating plaintiff.  Accordingly, VA has met its burden of articulating

15  a nondiscriminatory reason.

16          **4.**       **Plaintiff's Argument of Pretext**

17       Because defendant rebutted the presumption of discrimination, the burden shifts back to plaintiff

18  to establish that defendant's stated reasons for the adverse employment action was pretext for unlawful

19  discrimination.  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  Plaintiff may

20  establish "pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is

21  'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly,

22  by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of*

23  *California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citing *Godwin v. Hung Wesson,*

24  *Inc.*, 150 F.3d 1217,1220-21 (9th Cir. 1998)).  Plaintiff must provide "specific, substantial evidence"

25  that the reasons given were a pretext for discrimination. *Bradley*, 104 F.3d at 270.  In addition, Plaintiff

26  must establish that there was a causal connection between his protected status and the adverse

27  employment action.  *Mixon v. Fair Employment and Housing Com.*, 192 Cal. App. 3d 1306, 1317

28  (1987).

1    Here, plaintiff does not introduce direct evidence of discrimination.  He acknowledges that Mr.

2    Myres did not make any direct derogatory comments or call plaintiff racially derogatory terms.  Plaintiff

3    does not produce evidence of direct racial animus.

4    Plaintiff nonetheless may prevail by presenting indirect evidence that VA's proffered reasons for

5    terminating plaintiff are not worthy of credence.  To oppose the motion, plaintiff must show that the

6    "claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of

7    the truth at trial."  *First National Bank of Arizona*, 391 U.S. 253, 290, 88 S.Ct. 1575 (1968).  "A

8    disparate treatment plaintiff can survive summary judgment without producing any evidence beyond that

9    constituting his *prima facie* case, if that evidence raises a general issue of material fact regarding the

10   truth of the employer's proffered reasons."  *Chuang*, 225 F.3d at 1127 (citing *Reeves v. Sanderson*

11   *Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).  Plaintiff may satisfy this burden by proving that the

12   legitimate reasons offered by defendant were false (factually untrue), creating an inference that those

13   reasons were merely a pretext for discrimination.  *Reeves*, 530 US at 142.  If Plaintiff demonstrates

14   through specific evidence that a genuine issue of material fact exists, defendants' summary judgment

15   motion must be denied.  In a Fed. R. Civ. P. 56 motion, however, this Court does not resolve factual

16   issues.  *Chuang*, 225 F.3d at 1124 (ultimate question of employment discrimination is conducted most

17   appropriately by a factfinder, not on summary judgment).

18   Plaintiff has presented indirect evidence that VA's proffered reasons for terminating plaintiff are

19   not worthy of credence.  Plaintiff presents evidence that he was performing his position as journeyman

20   electrician adequately.  Plaintiff was never given a disciplinary action, negative review or any written

21   indication that his performance was lacking in any way.  His electrical work was inspected on a weekly

22   basis and always passed the inspections.  There is disputed material fact as to whether the photographic

23   evidence of plaintiff's purported inadequate work was indeed plaintiff's work.  He states he placed a

24   "mark" on his work and the photographs of electrical work do not contain his "mark."  Thus, there is

25   an issue of whether evidence has been fabricated or altered to justify the claim that his work was

26   inadequate.

27   Plaintiff presents evidence that he was treated differently from others.  Plaintiff presents evidence

28   that Mr. Myres "cussed and yelled" at him every day.  He was the only person so treated.  Other non-

14

1   African-Americans were not so adversely treated.  VA argues that whether plaintiff was "cussed and

2   yelled" at is irrelevant because plaintiff admits Mr. Myres did not make racially derogatory remarks

3   while he "cussed and yelled."  The VA also argues that whether Mr. Myres forced plaintiff to clean up

4   another person's coffee spill is irrelevant because it has nothing to do with race.  The VA's argument,

5   however, misses plaintiff's point.  Plaintiff argues that he, as the sole African-American, was treated in

6   this fashion, and no other Caucasian worker, was so treated.  He argues that he was "cussed and yelled

7   at" because he is African American.

8         Further, plaintiff presents evidence that if his performance has been substandard, he should have

9   been so informed through some communication or that his work not passing inspection. Since there was

10   no communication to plaintiff that his performance was substandard and defendant claims plaintiff was

11   terminated based upon his substandard performance, there is evidence to enable a reasonable trier of fact

12   to conclude that he was terminated for some other reason.  Given the lack of documentary discipline and

13   the different treatment of plaintiff, the jury could reasonably conclude that his termination was based

14   upon discriminatory reasons.

15                                    **CONCLUSION**

16         For the foregoing reasons, the motion for summary judgment or in the alternative summary

17   adjudication is DENIED.

18

19   IT IS SO ORDERED.

20   **Dated:   December 3, 2010**              **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28